ON REHEARING
DeCARLO, Judge.
On October 3, 1978, a judgment of Reversed and Remanded, without opinion, was *376 issued by this court in this appeal on authority of Ex parte Holt, 372 So.2d 370. On October 23, 1978, this court, on its own motion, determined to review the matter on rehearing.
The question of the voluntariness of appellant’s statement to police in regard to his involvement in the murder, has been answered in the Supreme Court’s opinion reversing the decision of this court. See Ex parte Holt, supra. Holt v. State, 372 So.2d 364, for pertinent facts and holding.
The question regarding the admissibility of testimony from a witness whose identity has been learned through appellant’s alleged involuntary confession remains to be resolved.
In Smith v. United States, 117 U.S.App. D.C. 1, 324 F.2d 879, involving the discovery of a witness’s identity through an illegally obtained confession, the issue was whether the testimony of that witness should be suppressed. Justice Burger, now Chief Justice of the United States Supreme Court, found the evidence admissible and commented that:
“Courts have gone a long way in suppressing evidence but no case as yet has held that a jury should be denied the testimony of an eyewitness to a crime because of the circumstances in which his existence and identity was learned.

“Here no confessions or utterances of the appellants were used against them; tangible evidence obtained from appellants, such as the victim’s watch, was suppressed along with the confessions. But a witness is not an inanimate object which like contraband narcotics, a pistol or stolen goods, ‘speak for themselves.’ The proffer of a living witness is not to be mechanically equated with the proffer of inanimate evidentiary objects illegally seized. The fact that the name of a potential witness is disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give.
“The uniqueness of this human process distinguishes the evidentiary character of a witness from the relative immutability of inanimate evidence.”
The Supreme Court of the United States, in Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182, a case factually similar to the case at bar on the point in question, considered the question whether a defendant’s involuntary admission, which led to the discovery of evidence incriminating that defendant, caused that evidence to be inadmissible at trial.
In that case, the defendant named a witness whom he stated would prove his claim of alibi, after stating to police that he understood his constitutional rights and did not want an attorney. Because the defendant was not advised that, as an indigent, he was entitled to appointed counsel, the trial court excluded his own statements taken during the interrogation. However, the lower court did not exclude the testimony of the witness, which testimony discredited the defendant’s defense of alibi.
The Supreme Court held that, although the accused’s statement was not obtained under circumstances comporting with the “Miranda Rule,” the use of a witness at trial whose identity was discovered as a result of such statement was not violative of the Fifth, Sixth or Fourteenth Amendments.
There the Supreme Court, referring to the use of such testimony, made the following comment:
“. . . The evidence which the prosecution successfully sought to introduce was not a confession of guilt by respondent, or indeed even an exculpatory statement by respondent, but rather the testimony of a third party who was subjected to no custodial pressures. There is plainly no reason to believe that Henderson’s testimony is untrustworthy simply because respondent was not advised of his right to appointed counsel. Henderson *377 was both available at trial and subject to cross-examination by respondent’s counsel, and counsel fully used this opportunity, suggesting in the course of his cross-examination that Henderson’s character was less than exemplary and that he had been offered incentives by the police to testify against respondent. Thus the reliability of his testimony was subject to the normal testing process of an adversary trial.” [emphasis added.]
The court went on to say:
. . Here we deal, not with the offer of respondent’s own statements in evidence, but only with the testimony of a witness whom the police discovered as a result of respondent’s statements. This recourse to respondent’s voluntary statements does no violence to such elements of the adversary system as may be embodied in the Fifth, Sixth, and Fourteenth Amendments.”
In summary, the Supreme Court stated: “[W]hen balancing the interests involved, we must weigh the strong interest under any system of justice of making available to the trier of fact all concededly relevant and trustworthy evidence which either party seeks to adduce. In this particular case we also ‘must consider society’s interest in the effective prosecution of criminals in the light of the protection our pre-Miranda standards afford criminal defendants.’ [citations omitted] These interests may be out-weighed by the need to provide an effective sanction to a constitutional right . . . but they must in any event be valued. Here respondent’s own statement, which might have helped the prosecution show respondent’s guilty conscience at trial, had already been excised from the prosecutions case pursuant to this Court’s Johnson decision. To extend the excision further under the circumstances of this case and exclude relevant testimony of a third-party witness would require far more persuasive arguments than those advanced by respondent.” [emphasis added]
In the case involving the appellant, Holt, his own statements were not admitted at trial. However, as a result of these statements, the identity of the witness, Sistrunk, was discovered. The fact that Holt may have given an involuntary statement does not require the conclusion that the testimony of Sistrunk was untrustworthy.
Sistrunk was available at trial and was subjected to a thorough and sifting cross-examination by appellant’s counsel. The reliability of Sistrunk’s testimony was subjected to the cross-examination testing process before the jury and it was for that body to determine whether his testimony was credible.
In view of the fact that Holt’s statement has been “excised” by the trial court, any further “excision” would deprive the trier of facts of relevant testimony, without regard for “society’s interest in the effective prosecution of criminals.”
Therefore, it is our judgment that, although the statement by the appellant, Holt, was inadmissible, the information leading to the discovery of the witness, Sistrunk, and his testimony implicating appellant were admissible.
Based on the foregoing reasoning, and that given in the opinion offered by this court on October 25, 1977, we again affirm the judgment of conviction.
AFFIRMED.
All the Judges concur.